IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MILAGROS JUAN DEGAMO, et al.,) | CIVIL NO. 13-00141 JAO-KJM |
| ) | |
| Plaintiffs, ) | ORDER DENYING PLAINTIFFS' |
| vs. ) | (1) MOTION TO ACCEPT |
| ) | RATIFICATION BY BANKRUPTCY |
| BANK OF AMERICA, N.A., et al. ) | TRUSTEES OR, IN THE |
| ) | ALTERNATIVE, PERMIT |
| Defendants. ) | SUBSTITUTION OF BANKRUPTCY |
| ) | TRUSTEES FOR PLAINTIFFS |
| ) | PROPRIOS AND PADUA AND |
| ) | (2) RENEWED MOTION FOR LEAVE |
| ) | TO FILE SECOND AMENDED |
| ) | COMPLAINT |
| _____ ) | |

**ORDER DENYING PLAINTIFFS' (1) MOTION TO ACCEPT
RATIFICATION BY BANKRUPTCY TRUSTEES OR, IN THE
ALTERNATIVE, PERMIT SUBSTITUTION OF BANKRUPTCY
TRUSTEES FOR PLAINTIFFS PROPRIOS AND PADUA AND
(2) RENEWED MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT**

INTRODUCTION

The present litigation, a putative class action, arises from Defendant Bank of

America's ("Defendant") non-judicial foreclosures of over a thousand Hawai'i

homeowners' mortgages. Plaintiffs Mac and Helen Padua (collectively "Paduas"),

and Susan Propios ("Ms. Propios") (collectively "Plaintiffs") request an order

(1) accepting ratification of this action by Elizabeth Kane ("Trustee Kane"), in her

capacity as Chapter 7 Trustee for the bankruptcy estate of the Paduas, and Dane

Field ("Trustee Field"), in his capacity as Chapter 7 Trustee of the bankruptcy estate of Ms. Propios, or, alternatively, permitting the Trustees to substitute in for the Paduas and Ms. Propios; and (2) granting leave to amend the First Amended Complaint ("FAC").

For the reasons articulated below, the Court DENIES Plaintiffs' (1) Motion to Accept Ratification by Bankruptcy Trustees or, in the Alternative, Permit Substitution of Bankruptcy Trustees for Plaintiffs Propios and Padua and (2) Renewed Motion for Leave to File Second Amended Complaint, Doc. No. 127, and DISMISSES the action with prejudice.

## BACKGROUND

A. Factual History

    1. The Paduas

On September 24, 2009, the Paduas obtained a mortgage from Defendant, which was secured by real property located on Kekuanoni Street in Honolulu. FAC, Doc. No. 14 at ¶¶ 59-60. Thereafter, Defendant assigned the mortgage to BAC Home Loans.[1]  *Id.* at ¶ 64. The Paduas defaulted on the mortgage and BAC Home Loans instituted foreclosure proceedings against them. *Id.* at ¶¶ 65-72. BAC Home Loans was the highest bidder at the September 16, 2010 public auction. *Id.* at ¶¶ 73, 77.

---

[1]  BAC Home Loans is a subsidiary of Defendant. FAC, Doc. No. 14 at ¶ 12.

On November 30, 2011, the Paduas filed for Chapter 7 Bankruptcy. Opp'n at 3 (citing *In re Padua*, Case No. 11-03105 (Bankr. D. Haw.)). In their Chapter 7 Schedules, the Paduas responded "None" as to whether they possessed any "contingent and unliquidated claims of every nature." Doc. No. 80-3, Schedule B – Personal Property at ¶ 21. The Bankruptcy Court discharged the Paduas' debt on March 6, 2012. Doc. No. 80-5.

2. Ms. Propios

Ms. Propios obtained a $484,000 loan from Community Lending Incorporated on June 28, 2007, and executed a promissory note ("Note") for $484,000 payable to Community Lending. FAC, Doc. No. 14 at ¶ 82. The loan funds were used to purchase real property located on Lehopulu Street in Waipahu. *Id.* at ¶ 83. Ms. Propios granted Mortgage Electronic Registration Systems, Inc. ("MERS") a mortgage on the property to secure repayment of the Note. *Id.* MERS thereafter assigned the mortgage to BAC Home Loans. *Id.* at ¶ 87.

Following Ms. Propios' default on the mortgage, BAC Home Loans commenced foreclosure proceedings. *Id.* at ¶¶ 88-95. BAC Home Loans was the highest bidder at the March 9, 2010 auction. *Id.* at ¶ 101.

On July 19, 2011, Ms. Propios filed for Chapter 7 bankruptcy. Opp'n at 3 (citing *In re Propios*, No. 11-02005 (Bank. D. Haw.)). In her Chapter 7 Schedules, Ms. Propios responded "None" as to whether she possessed any "contingent and

unliquidated claims of every nature." Doc. No. 80-6, Schedule B – Personal Property at ¶ 21. The Bankruptcy Court discharged Ms. Propios' debt on October 24, 2011. Doc. No. 80-8.

B. Procedural History

Milagros Juan Degamo[2] commenced this action on September 7, 2012, in the Circuit Court of the First Circuit, State of Hawai'i. On March 25, 2013, Defendant removed the action to this court.

On April 23, 2013, Plaintiffs filed the FAC. Doc. No. 14. The FAC added the Paduas and Ms. Propios as Plaintiffs.

On October 17, 2013, the Court stayed the case pending Ninth Circuit appeals in *Lima v. Deutsche Bank National Trust Co.*, Civil No. 12-00509 SOM-RLP; *Gibo v. U.S. Bank N.A.*, Civil No. 12-00514 SOM-RLP; and *Bald v. Wells Fargo Bank*, Civil No. 13-00135 SOM-KSC. Doc. No. 50.

On May 23, 2017, Defendant filed a notice informing the Court that the Ninth Circuit issued a decision regarding the *Lima* and *Gibo* cases. Doc. No. 52. The Court lifted the stay on June 22, 2017. Doc. No. 61.

On December 8, 2017, Plaintiffs filed a Motion for Leave to File Second Amended Complaint. Doc. No. 77. Defendant filed a Motion for Judgment on the

---

[2] Ms. Degamo dismissed her claims against Defendant by stipulation on September 22, 2017. Doc. No. 76.

Pleadings; to Strike Class Allegations; and to Modify First Amended Rule 16 Scheduling Order on December 26, 2017. Doc. No. 80.

The case was again stayed on February 13, 2018, to allow Plaintiffs to re-open their bankruptcy cases "in order to amend their respective schedules, disclose the instant claims, and determine what the respective trustees intend to do." Doc. No. 113. Due to the stay, the Motion for Leave to File Second Amended Complaint and the Motion for Judgment on the Pleadings; to Strike Class Allegations; and to Modify First Amended Rule 16 Scheduling Order were not ruled upon.

In April 2018, Plaintiffs amended their bankruptcy schedules. Opp'n at 5.

On May 31, 2018, Plaintiffs filed a Submission of Documents Under Fed. R. Civ. Proc. Rule 17(a)(3), Relating to Ratification and Notice of Ratification. Doc. No. 117.

At an August 15, 2018 status conference, the Court directed Plaintiffs to file a Motion for Ratification and/or to Amend Complaint by September 14, 2018. Doc. No. 124. In anticipation of the deadline to file this Motion, the Court lifted the stay on September 13, 2018. Doc. No. 126. Plaintiffs timely filed the instant Motion. Doc. No. 127.

The Court held a hearing on the Motion on February 1, 2019.  At the parties'
request, the Court deferred issuance of this Order during the pendency of their
mediation proceedings.

DISCUSSION

Plaintiffs ask the Court to accept the ratifications of the Trustees pursuant to
Federal Rule of Civil Procedure ("FRCP") 17.  Alternatively, Plaintiffs move for
permission to substitute the Trustees for Plaintiffs.  Plaintiffs additionally request
leave to amend their FAC to (1) add plaintiffs to represent the putative class;
(2) add subclasses; (3) add factual allegations in support of the asserted claims;
(4) remove Ms. Degamo as a Plaintiff; and (5) remove or modify certain
allegations given the dismissal of Defendants Derek Wong, RCO Hawaii, and
Routh Crabtree Olsen on September 6, 2017.

Defendant argues that Plaintiffs lack standing—whether prudential or
constitutional—to pursue their claims or amend their FAC because they forfeited
all existing legal claims by failing to include those claims in their bankruptcy
estates upon filing for bankruptcy.  Plaintiffs proffer that Article III standing is not
at issue, as a real-party-in-interest challenge is a prudential matter.

In every federal case, standing is a threshold matter that must be established
by the plaintiff.  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004),
*abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components,*

*Inc.*, 572 U.S. 118 (2014). "[S]tanding jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement . . . and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction." *Id.*

A. Article III/Constitutional Standing

To assert constitutional, or Article III, standing, a plaintiff "must have suffered an 'injury in fact' that is fairly traceable to the United States and that a favorable court decision could likely redress." *Dunmore v. United States*, 358 F.3d 1107, 1111-12 (9th Cir. 2004) (*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). When a plaintiff lacks constitutional standing, a suit "is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)) (quotations omitted); *City of Los Angeles v. Cty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009).

B. Prudential Standing

By contrast, prudential standing is

> a doctrine not derived from Article III and "not exhaustively defined" but encompassing . . . at least three broad principles: "'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative

branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'"

*Lexmark*, 572 U.S. at 126 (citations omitted).  In addition to the "irreducible constitutional minimum of standing," prudential standing requires a plaintiff to assert his or her "own legal interests as the real party in interest" *Dunmore*, 358 F.3d at 1112 (citation omitted); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").  Unlike constitutional standing, lack of prudential standing does not deprive the court of subject matter jurisdiction.  *Dunmore*, 358 F.3d at 1112.  This is because "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case.[]"[3] *Lexmark*, 572 U.S. at 128 n.4 (citation omitted).

FRCP 17(a)(1) requires an action to "be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  In the bankruptcy context, a debtor's

---

[3]  To illustrate, "lack of statutory standing requires dismissal for failure to state a claim, [while] lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (citation omitted).

"legal or equitable interests" in his property become "the property of the bankruptcy estate and are represented by the bankruptcy trustee." *Turner v. Cook*, 362 F.3d 1219, 1225-26 (9th Cir. 2004) (citing 11 U.S.C. § 541(a)(1)). Legal and equitable interests include causes of action. *Id.* at 1226 (citing *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986)). If a debtor fails to include causes of action in a bankruptcy schedule, those claims remain the bankruptcy estate's property and do not revert to the debtor. *See Cusano v. Klein*, 264 F.3d 936, 945-46 (9th Cir. 2001).

1. Federal Rule of Civil Procedure 17

Prudential standing defects can be cured by FRCP 17(a), which permits a plaintiff "to obtain the real party in interest's ratification to proceed with the [] causes of action" and "enables [a plaintiff] to avoid being dismissed for failing to be the real party in interest when he filed his complaint and being time-barred upon refiling." *Dunmore*, 358 F.3d at 1112; *Lindsey v. Starwood Hotels & Resorts Worldwide Inc.*, 409 F. App'x 77, 79 (9th Cir. 2010) ("Rule 17 is a proper procedural device to cure [a] failure to state a claim."). FRCP 17(a)(3) provides: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). If the real party in interest ratifies, joins, or is substituted, the

"action proceeds as if it had been originally commenced by the real party in interest." *Id.*

The real party in interest's ratification or substitution can relate back to the filing date of the complaint if the plaintiff's "decision to sue in his own name was an understandable mistake and not a strategic decision."[4] *Dunmore*, 358 F.3d at 1112 (citation omitted); *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1128 (9th Cir. 2017) ("We have held that Rule 17 relief is available where counsel makes an 'understandable' error in naming the real party in interest."); Fed. R. Civ. P. 17(a) advisory committee's notes to 1966 amendment ("The provision . . . is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made."); *U.S. for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074 (9th Cir. 1989).

A bankruptcy estate's ratification of a lawsuit may be established by the bankruptcy trustee's abandonment of the relevant claim(s) after providing creditors with notice. *See Turner*, 362 F.3d at 1226 ("Section 554 of title 11 of the United States Code requires notice and a hearing for abandonment to occur, and

---

[4] *See, e.g., Jones*, 873 F.3d at 1128 (finding that "while hardly the best excuse," the plaintiffs made an "honest and understandable mistake" in naming the real party in interest "because the district court had approved a stipulation amending their complaint to name the estate as a plaintiff" and "it was not unreasonable for [the] plaintiffs to have construed the district court's approval of the stipulation as a determination that they had named the proper party").

Bankruptcy Rule 6007 requires the trustee to give notice of a proposed abandonment to all creditors."); *Dunmore*, 358 F.3d at 1112 (noting that the bankruptcy trustee's abandonment of the plaintiff's claims could constitute the bankruptcy estate's ratification of the lawsuit). If the trustee does not abandon the claim, "the debtor lacks standing to bring the [] cause of action." *Rowland v. Novus Fin. Corp.*, 949 F. Supp. 1447, 1454 (D. Haw. 1996) (finding that the plaintiff lacked standing to assert truth in lending act claims and the bankruptcy trustee was the proper plaintiff for the suit); *Just Film, Inc. v. Merch. Servs., Inc.*, 873 F. Supp. 2d 1171, 1176 (N.D. Cal. 2012) (citations and quotations omitted) ("Accordingly, a bankruptcy petitioner loses standing for any causes of action and the estate becomes the only real party in interest unless the bankruptcy trustee abandons the claims.").

    a. <u>Timeliness</u>

As a preliminary matter, the Court addresses Plaintiffs' argument that they satisfied FRCP 17(a)(3)'s timeliness consideration by effectuating ratification or substitution by the deadline imposed by the Court.[5]  Plaintiffs contend that ratification or substitution is timely because both they and the Trustees met the

---

[5]  Plaintiffs' arguments exclusively address ratification even though they alternatively request substitution. Except for the ratification-specific arguments, the Court applies Plaintiffs' arguments—such as those concerning "understandable mistake"—to the issue of substitution, as both are governed by FRCP 17(a).

court-imposed deadline of May 31, 2018 to present evidence that the Trustees retained Plaintiffs' counsel and were willing to ratify this action. However, "reasonable time" in FRCP 17(a)(3) refers to the opportunity the Court must allow, following an objection, for the real party in interest to ratify, join, or be substituted into the action after before dismissing an action. Fed. R. Civ. P. 17(a)(3). FRCP 17(a)(3) does not govern the Court's authority to dismiss an action; it merely provides a mechanism for plaintiffs to cure real-party-in-interest defects to avoid dismissal.

Satisfaction of the court-imposed deadline did not automatically cure the prudential standing defect. In conformance with FRCP 17(a)(3), the Magistrate Judge afforded Plaintiffs an opportunity to reopen their bankruptcy cases "in order to amend their respective schedules, disclose the instant claims, and determine what the respective trustees intend to do." Doc. No. 113. Although the Magistrate Judge permitted Plaintiffs to reconcile the bankruptcy issues, he clearly indicated:

> The Court expresses no opinion on Plaintiffs' ability to obtain the relief they seek from the Bankruptcy Court, or how such relief (or lack thereof) might impact this case. The Court nonetheless finds it reasonable to stay the instant case to await resolution of these legal issues that may bear on the adjudication of the claims in this action.

*Id.* Not only did the Court offer the "reasonable time" required by FRCP 17(a)(3), judicial economy was served by allowing the bankruptcy issues to be resolved before addressing the issues presently before the Court. If the Trustees were not

agreeable to serving as the real parties in interest, Plaintiffs would have no basis to file this Motion.

    b. <u>Ratification</u>

Plaintiffs lack prudential standing because their claims remain the property of their bankruptcy estates, which are represented by Trustees Kane and Field. Plaintiffs brought this Motion to cure their lack of prudential standing by first asking the Court to accept Trustees Kane and Field's ratifications.

Plaintiffs posit that Trustees Kane and Field's ratification requests, submitted on May 31, 2018, satisfy FRCP 17(a)(3)'s ratification requirement. Doc. No. 117, Ex. B at 2-3; Ex. D at 2-3. Plaintiffs appear to operate under the misunderstanding that ratification would recognize the Trustees as the real parties in interest. Mem. in Support of Mot. at 14. However, ratification would instead allow the claims to proceed in Plaintiffs' names.

Trustees Kane and Field have agreed "to continue Plaintiff[s'] action[s] as presently styled, for the sole benefit of the bankruptcy estate[s], which [are] currently pending before the United States Bankruptcy Court for the District of Hawaii in Bk. No. 11-02005 [and Bk. No. 11-03105]." Doc. No. 117, Ex. B at 2; Ex. D at 2. However, this does not constitute ratification under FRCP 17(a)(3) in the bankruptcy context. When dealing with claims that should have been listed in a debtor's bankruptcy schedule, proper abandonment of claims after providing

13

creditors with notice could constitute ratification of the lawsuit by the bankruptcy estate. *Turner*, 362 F.3d at 1226 (finding that the bankruptcy trustee's letter to counsel indicating "his willingness to allow Turner to proceed with his appeal . . . is insufficient to confer authority on Turner's counsel to prosecute this appeal because it fails to effectuate an actual abandonment of the trustee's interest in [] Turner's causes of action—to the contrary, the letter contemplates the estate's pursuit of these causes of action '[i]n the event that,' via this appeal, 'the dismissal is overturned'" (second alteration in original)); *Dunmore*, 358 F.3d at 1112; *Cullen v. Bank One Corp.*, 145 F. App'x 192, 193 (9th Cir. 2005) (citation omitted) (noting that the trustee's abandonment of its interest in the lawsuit, relinquishing it to the plaintiff, "may constitute the estate's ratification of the debtor's actions, permitting the debtor to cure the standing problem so long as the debtor had made an 'understandable mistake' by proceeding in his own name, as opposed to some sort of strategic manipulation"); *Radford v. U.S. Bank Nat'l Ass'n*, No. CV 10-00766 LEK-KSC, 2011 WL 4054863, at *7 (D. Haw. Sept. 9, 2011) (concluding that the plaintiff had standing because the bankruptcy trustee "conferred authority on Plaintiff to litigate the claims in the instant case" by formally abandoning the claims in the bankruptcy proceedings).

Because the Trustees have not abandoned Plaintiffs' claims—and in fact intend to continue Plaintiffs' action for the sole benefit of their bankruptcy

estates—they have not ratified Plaintiffs' claims pursuant to FRCP 17(a)(3). Accordingly, Plaintiffs lack prudential standing.

### c. Substitution

Alternatively, Plaintiffs seek to substitute Trustees Kane and Field for the Paduas and Ms. Propios, respectively. To determine whether substitution is proper, the Court evaluates whether: (1) it was difficult to ascertain the identity of the real party in interest or (2) Plaintiffs' decisions to sue in their own names were understandable mistakes and not strategic decisions. *Dunmore*, 358 F.3d at 1112; *CMA*, 890 F.2d at 1074; Fed. R. Civ. P. 17(a) advisory committee's note to 1966 amendment. Misconstruing the inquiry, Plaintiffs focus on Defendant's purported strategic delay in objecting to their standing; however, FRCP 17(a) does not impose an obligation upon Defendant to timely point out deficiencies in Plaintiffs' identification of the real parties in interest. Rather, Plaintiffs bear the burden of establishing standing and prosecuting the action in the name of the real party in interest pursuant to FRCP 17(a)(1). Notably, Plaintiffs waited until early 2018 to attempt to cure the prudential standing issue—after Defendant raised it—even though their counsel learned of their bankruptcy proceedings in 2015 and they had personal knowledge of their bankruptcy proceedings well before then.[6]

---

[6] FRCP 17(a)(3) is not a mechanism for a plaintiff to stand idly by until a defendant objects, knowing the real party in interest has not been named.

i.    Difficulty of Determining the Real Party in Interest

Although the Court recognizes that Plaintiffs' bankruptcy proceedings preceded this lawsuit, it was not difficult to determine the identities of the real parties in interest.  It is well-established that a debtor's "legal or equitable interests" in his or her property become "the property of the bankruptcy estate and are represented by the bankruptcy trustee." *Turner*, 362 F.3d at 1225-26.  Therefore, even if Plaintiffs were not initially aware that their claims should have been included in their bankruptcy schedules, or that the Trustees were the real parties in interest at the time they were added to this action, it was not difficult to ascertain that Trustees Kane and Field were the real parties in interest once counsel realized that Plaintiffs had filed for bankruptcy.

ii.    No Understandable Mistake

Neither does the Court find that Plaintiffs' failures amounted to understandable mistakes.  When a plaintiff's mistake in filing a claim in his or her own name is not honest and understandable, the protections of FRCP 17(a)(3) do not apply.  *Clift v. BNSF Ry. Co.*, 726 F. App'x 643, 643-44 (9th Cir. 2018).  In *Clift v. BNSF Railway Co.*, the Ninth Circuit affirmed the district court's conclusion that the plaintiff "was not entitled to the protections of Rule 17(a)(3), because 'determination of the right party to sue' was not 'difficult' and [the plaintiff's] mistake was not 'understandable.'" *Id.* at 643 (citation omitted ).  The

district court relied on evidence demonstrating that although the plaintiff was aware that he needed to correct his bankruptcy filings to include the claim at issue, he did nothing to fix the omission at the time. *Id.* According to the Ninth Circuit, this evidence was "sufficient to affirm the district court's determination that the protections of Rule 17(a)(3) did not apply, because [the plaintiff's] mistake in filing the claim in his own name was not honest and understandable." *Id.* at 644*; see also, e.g., Hassanati ex rel. Said v. Int'l Lease Fin. Corp.*, 643 F. App'x 620, 622 (9th Cir. 2016) ("In light of the procedural history in this case, we conclude that Plaintiffs' close to two-year delay in seeking appointment [of a personal representative] was unreasonable and not an understandable mistake."); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, No. 1407, 2006 WL 2136722, at *3-4 (W.D. Wash. July 28, 2006) (failure to schedule claims/read petition before signing not an "understandable mistake" despite the plaintiff's alleged cognitive impairment).

The Court accepts Plaintiffs' representations that they were unaware of their present claims during the pendency of their bankruptcy proceedings. However, that does not explain their significant delay in seeking substitution or ratification after their counsel learned about the bankruptcy proceedings in 2015. Plaintiffs' counsel attested that he "made a mental note at that time that if and when the stay of this case that was then in effect was lifted, [he] would contact the trustee of each

of the above debtors and commence reopening the bankruptcy case to schedule these claims and allow the trustee to decide what to do with them." Opp'n, Ex. 1 at ¶ 3. He further admitted that while it was his regular practice to take necessary steps with the bankruptcy court and trustees for plaintiffs in his other cases, he failed to follow his usual practice due to inadvertence for the following reasons: (1) the case was stayed, over Plaintiffs' objections, at the time he learned of Plaintiffs' bankruptcy actions, and he decided that there was no point in reopening those proceedings during the stay and while there was no case to prosecute; (2) "it was a matter that was difficult to calendar because [he] could not know when the stay would be lifted and [he] regrettably relied on [his] simple mental note and general memory powers" and consequently failed to contact the Trustees and reopen the bankruptcy proceedings upon the lifting of the stay on June 22, 2017; (3) he never intended to conceal Plaintiffs' claims from the Trustees; (4) he realized for the first time on December 27, 2017, when he saw Defendant's filings, that he failed to reopen the bankruptcy proceedings and notify the Trustees. *Id.* at ¶¶ 4-9.

None of these justifications constitute an "understandable mistake." First, Plaintiffs' counsel concedes that he had known of the bankruptcy proceedings since September 2015. Upon discovering this information, counsel decided to defer taking the necessary steps to reopen the bankruptcy proceedings and contact

the Trustees.  This choice was a deliberate one and counsel's inaction appears to be a strategic decision given his usual practice of addressing bankruptcy proceedings and communicating with bankruptcy trustees for his clients in other cases.  Counsel complained that the stay in this case was imposed over Plaintiffs' objection, yet his decision to take no action caused these proceedings to be stayed for an additional seven months—from February 13, 2018 to September 13, 2018—to allow Plaintiffs to reopen their bankruptcy proceedings to amend their schedules and disclose their claims, to determine what the Trustees intended to do, and to file the present Motion.[7]

---

[7]  Counsel's deliberate inaction reveals a strategy behind the delay.  The individuals that Plaintiffs seek to add as plaintiffs are also the movants in the recently-filed Motion to Intervene.  *Compare* Mem. in Supp. of Mot. at 27 *with* Mot. to Intervene, Doc. No. 144-1 at 1.  The foreclosure sales for the proposed plaintiffs/intervention movants' properties occurred between 2009 and 2011.  As such, Plaintiffs needed this action to continue proceeding to ensure that the proposed plaintiffs' claims could relate back to the original complaint pursuant to FRCP 15(c).  Mem. in Supp. of Mot. at 34 ("Here, 'futility' cannot be shown because (a) the statute of limitations for the Proposed Plaintiffs was tolled as of the filing of the Complaint and thus allows relation back[], and (b) the substantive amendments relate back to the date of the original Complaint."); Mot. to Intervene, Doc. No. 144-1 at 23 ("*Resh*'s exception to *American Pipe*'s equitable tolling rule risks impairing Movants' interest in realizing the benefits of class-wide relief, since the denial of class certification here will time-bar Movants from pursuing a second 'piggy-back' class action for either their UDAP/UMOC or wrongful foreclosure claims.").  FRCP 17(a) is "not a provision to be distorted by parties to circumvent the limitations period."  *CMA, Inc.*, 890 F.2d at 1075.  It "is the codification of the salutary principle that an action should not be forfeited because of an honest mistake."  *Id.*

Second, counsel's failure to calendar the matter and forgetting about his obligation to reopen the bankruptcy proceedings and address the issue with the Trustees is not an "understandable mistake," particularly if it is counsel's regular practice to address bankruptcy proceedings and communicate with bankruptcy trustees. Counsel even admits to regularly communicating with Trustee Field, who is a client in other matters. *Id.* at ¶ 8. In 2016, counsel informed Trustee Field that he had other cases involving clients who went through bankruptcy and that he would contact Trustee Field about those cases. *Id.* Thus, counsel could have addressed the bankruptcy issues at multiple points during the pendency of the years-long stay, or in the months immediately following the lifting of the stay, but he declined to do so.

Counsel's continued failure to address the bankruptcy proceedings until Defendant raised the issue in its motion for judgment on the pleadings on December 26, 2017, Doc. No. 80, also demonstrates lack of an "understandable mistake." At that point, even factoring the stays, Plaintiffs had been part of this litigation for approximately one year. Excluding the stays, counsel took no action for three years and three months, despite having the knowledge to do so.

### iii. Prejudice to Defendant

Plaintiffs also argue that FRCP 17(a) relief is proper because Defendant will not be prejudiced by the ratification of the Trustees, which is a mere formality.[8] The substitution of the Trustees for Plaintiffs would be a mere formality, but Defendant would nevertheless suffer some degree of prejudice. Plaintiffs commenced this case in 2013 and it has been active for nearly two years. Nonetheless, Plaintiffs are still attempting to amend their FAC to add plaintiffs, subclasses, and allegations. Moreover, the proposed plaintiffs are concurrently requesting intervention.

The delays caused by Plaintiffs' inaction and counsel's conscious decision to defer reconciliation of the bankruptcy/real party in interest issues cannot be disregarded. Their delays—whether intentional or not—have caused Defendant to incur additional expenses, impair Defendant's ability to proceed to trial, and threaten to interfere with the rightful decision of the case. *See, e.g.*, *Hassanati*, 643 F. App'x at 623 ("Furthermore, giving Plaintiffs additional time would further delay this action, thereby prejudicing Defendant, which has already expended significant resources defending this lawsuit."). Even assuming, *arguendo*, that Defendant would not be prejudiced by substitution, the lack of prejudice does not outweigh the above factors.

---

[8] Plaintiffs rely on out-of-circuit cases for this argument.

For these reasons, the Court finds that Plaintiffs have failed to establish that they are entitled to relief under FRCP 17(a)(3).  Without the Trustees' substitutions for Plaintiffs, the real parties in interest have not been named and Plaintiffs lack prudential standing to pursue this action.

The Court need not address Article III standing because it has concluded that Plaintiffs lack prudential standing.  *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987); *McMichael v. Napa Cty.*, 709 F.2d 1268, 1273 (9th Cir. 1983) ("Although we could have used a similar analysis to decide the article III standing issue, prudence dictates that we decide the standing on prudential grounds.").  The Court also need not address judicial estoppel because it determines that lack of prudential standing warrants dismissal.

Accordingly, the Court DENIES Plaintiffs' Motion and DISMISSES this action with prejudice.[9]  In light of the dismissal, the Court DENIES Plaintiffs' Motion to Intervene as moot.

## CONCLUSION

Based on the foregoing, the Court DENIES Plaintiffs' (1) Motion to Accept Ratification by Bankruptcy Trustees or, in the Alternative, Permit Substitution of

---

[9]  Remand is not an option because dismissal is not based on lack of Article III standing.  Hence, subject matter jurisdiction is not implicated.  *See* 28 U.S.C. § 1447(c) (emphasis added) ("If at any time before final judgment it appears that the district court *lacks subject matter jurisdiction*, the case shall be remanded.").

Bankruptcy Trustees for Plaintiffs Propios and Padua and (2) Renewed Motion for Leave to File Second Amended Complaint, filed September 14, 2018, and DISMISSES this action with prejudice. The Court additionally DENIES AS MOOT Plaintiffs' Motion to Intervene, filed March 1, 2019.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, March 14, 2019.

Jill A. Otake
United States District Judge

CIVIL NO. 13-00141 JAO-KJM; *DEGAMO, et al. v. BANK OF AMERICA*; ORDER DENYING PLAINTIFFS' (1) MOTION TO ACCEPT RATIFICATION BY BANKRUPTCY TRUSTEES OR, IN THE ALTERNATIVE, PERMIT SUBSTITUTION OF BANKRUPTCY TRUSTEES FOR PLAINTIFFS PROPRIOS AND PADUA AND (2) RENEWED MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

23